O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES TAYLOR, | ) Case No. CV 12-01253-OP |
| Plaintiff, | ) |
| v. | ) MEMORANDUM OPINION AND ) ORDER |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) |
| Defendant. | ) ) |

The Court[1] now rules as follows with respect to the two disputed issues listed in the Joint Stipulation ("JS").[2]

/ / /

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (ECF Nos. 11, 12.)

[2] As the Court advised the parties in its Case Management Order, the decision in this case is being made on the basis of the pleadings, the Administrative Record and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g). (ECF No. 7 at 3.)

1

## I.
## DISPUTED ISSUES

As reflected in the Joint Stipulation, the disputed issues raised by Plaintiff as the grounds for reversal and/or remand are as follows:

(1) Whether the Administrative Law Judge ("ALJ") properly considered the opinions of Plaintiff's treating physician, Joseph Pierson, M.D.; and

(2) Whether the ALJ properly assessed Plaintiff's residual functional capacity. (JS at 2-3.)

## II.
## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

/ / /
/ / /
/ / /

# III.
# DISCUSSION

A. **The ALJ's Findings.**

On August 25, 1993, an application for supplemental security income was filed on behalf of the then three-year old Plaintiff. (JS at 2 (citing Administrative Record ("AR") at 10, 197-99).) The Commissioner determined that Plaintiff suffered from a disability as a child due to a learning disability, and he began to receive benefits. (Id.) At age eighteen, the Commissioner commenced redetermination of Plaintiff's benefits. (Id.)

On April 6, 2010, the ALJ determined that Plaintiff has the severe impairments of scoliosis, history of learning disorder, and borderline intellectual functioning. (AR at 12.) The ALJ found that since February 1, 2008, Plaintiff had the RFC to perform less than the full range of light work. (Id. at 15.) Specifically, the ALJ found that Plaintiff could lift and carry up to twenty pounds occasionally and ten pounds frequently; stand and walk up to six hours in an eight-hour day; and sit up to six hours in an eight-hour day. (Id.) The ALJ also also found Plaintiff was limited to simple repetitive work. (Id.)

To determine the extent to which Plaintiff's limitations eroded his ability to make a successful adjustment to other work, the ALJ asked the vocational expert ("VE") whether jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and RFC. (Id. at 21.) Based on the testimony of the VE, the ALJ determined Plaintiff could make a successful adjustment to other work that exists in significant numbers in the national economy such as assembler (Dictionary of Occupational Titles ("DOT") No. 712.687-010); and sorter (DOT No. 222.687-014). (AR at 18.) Thus, the ALJ determined that Plaintiff's disability had ended on February 1, 2008, and he had not become disabled again since that date. (Id.)

**B.     The ALJ Properly Evaluated the Opinion of the Treating Physician.**

   **1.     Background.**

Plaintiff contends that the ALJ misstated the treatment options of his treating physician, Dr. Pierson, when he termed them "conservative," and failed to provide clear and convincing reasons for rejecting Dr. Pierson's opinions. (JS at 6.) Plaintiff also contends that because he was unrepresented at the hearing before the ALJ, the ALJ had a heightened duty to develop the record and should have ordered an orthopedic examination. (Id.)

On January 14, 2010, Plaintiff was first seen by his treating physician, Dr. Pierson. Dr. Pierson opined that Plaintiff suffers from scoliosis, which produces persistent muscle strain, pain, and muscle spasm. (AR at 244). He noted that Plaintiff had "failed a course of conventional medical treatment including limited Physical Therapy"; would need "additional physical therapy treatments and medications;" and "should be allowed disability for at least 6 months in order that he receive additional therapy." (Id.) He noted that the additional treatment would include trigger point injections, ultrasound and TENS physical therapy, massage therapy, and Ketorolac injections. (Id.) Finally, he stated that if Plaintiff "does find work then there should not be any bending, stooping, squatting or climbing up ladders . . . [and] lifting should be limited to no more than 15 lbs." (Id.)

The ALJ discounted Dr. Pierson's opinions:

> Although I have considered Dr. Pierson's opinions in arriving at the claimant's residual functional capacity, I also note that there is little evidence to support these opinions. The claimant was only seen at AHSMG on three occasions, and there are no medical records that document the claimant's condition during these visits. Dr. Pierson also indicates that the claimant's scoliosis has been treated conservatively with non-steroidal anti-inflammatory drugs (NSAIDs), anti-spasmodic

  agents, and physical therapy. I also note that Dr. Pierson recommended that the claimant continue this conservative course of treatment rather than consider more aggressive forms of treatment such as surgical intervention.

  Indeed, the claimant's general treating notes give no indication that the claimant's scoliosis was severe enough to preclude the claimant from working. There is no evidence that the claimant has exhibited reduced ranges of motion, abnormal gait, or deficits in motor or neurological functions. In fact, in October 2007, treating notes reveal that the claimant was doing well overall, and the claimant's May 2008 IEP indicated that the claimant was "actively mobile." The claimant also admits that he is able to walk for long distances. In fact, the claimant testified that he believes that he would be able to engage in work such as stocking shelves or working behind a counter, so long as he would not have to lift heavy items. I credit the claimant in this regard as consistent with the overall record in this case.

(Id. at 16 (citations omitted).)

  **2. Applicable Law.**

It is well established in the Ninth Circuit that a treating physician's opinion is entitled to special weight, because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. §§ 404.1527(d), 416.927(d). Where the treating physician's opinion is uncontroverted by another doctor, it may be

rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). If the treating physician's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The ALJ can "meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Thomas, 278 F.3d at 957 (citation and quotation omitted).

### 3. Analysis.

The Court finds that the ALJ provided clear and convincing reasons[3] for discounting the opinions of Dr. Pierson.

The ALJ noted that there was no evidence in the record that Plaintiff's scoliosis was so severe as to preclude him from working. (AR at 16.) Indeed, Plaintiff's prior treatment notes and school notes indicated that Plaintiff was "doing well overall" and was "actively mobile." (Id. at 71-81, 98.) Dr. Pierson submitted none of his own treating records for Plaintiff's three visits to him in order to support his opinions. (Id. at 16.) Moreover, Dr. Pierson never stated that Plaintiff could not or should not work; he specifically stated "*[i]f he does find work*" and qualified that by noting "there should not be any bending, stooping, squatting or climbing up ladders . . . [and] lifting should be limited to no more

---

[3] Although as noted by the ALJ that Dr. Pierson's opinions were controverted by Plaintiff's earlier medical records (JS at 16 (citing AR at 71-81)), because the Court finds that the ALJ's reasons for discounting Dr. Pierson's opinions meet the clear and convincing standard, they also satisfy the lesser burden of being "specific and legitimate" reasons for discounting those opinions.

than 15 lbs."[4]  (Id. at 244 (emphasis added).)  It is not improper for an ALJ to discount a report such as Dr. Pierson's that does not explain the basis for the conclusions.  Thomas, 278 F.3d at 957 (an ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9t Cir. 2001) (same).  Moreover, Plaintiff himself indicated he could walk long distances and believed he would be able to work, so long as he did not have to lift heavy items.  (AR at 16, 128, 261-62.)

It was also proper for the ALJ to rely on the fact that Dr. Pierson had been treating Plaintiff conservatively and recommended continuing conservative treatment consisting largely of additional physical therapy and medication trials, and that did not involve surgery.  Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (ALJ may properly rely on the fact that only conservative treatment had been prescribed).

Nor was there any reason for the ALJ to further develop the record.  The ALJ has an independent duty to fully and fairly develop a record in order to make a fair determination as to disability, even where the claimant is represented by counsel.  See Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003); see also Tonapetyan, 242 F.3d at 1150 (citing Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)); Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996) (citing Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)).  Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry."  See Tonapetyan, 242 F.3d at 1150 (citing Smolen, 80 F.3d at 1288).  That duty is

---

[4] The Court notes that the DOT descriptions for the jobs of assembler and sorter provide that those positions do not require climbing, balancing, stooping, crouching, or crawling.  Thus, they implicitly incorporate Dr. Pierson's restrictions to no bending, stooping, squatting, or climbing ladders.

heightened when the claimant is unrepresented, as Plaintiff was at the hearing, and thus unable to protect his or her own interests. Celaya, 332 F.3d at 1183; see also Tonapetyan, 242 F.3d at 1150; Crane, 76 F.3d at 255. However, it is the plaintiff's burden to prove disability. Bayliss v. Barnhart, 427, F.3d 1211, 1217 (9th Cir. 2005) (quoting Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) ("The claimant bears the burden of proving that she is disabled")).

When the duty to develop the record is triggered, the ALJ can develop the record by (1) making a reasonable attempt to obtain medical evidence from the claimant's treating sources; (2) ordering a consultative examination when the medical evidence is incomplete or unclear and undermines the ability to resolve the disability issue; (3) subpoenaing or submitting questions to the claimant's physicians; (4) continuing the hearing; or (5) keeping the record open for more supplementation. Tonapetyan, 242 F.3d at 1150; 20 C.F.R. § 416.917. Here, as previously discussed, the ALJ reasonably determined that the medical and non-medical evidence was sufficient to make a determination as to Plaintiff's RFC.

Based on the foregoing, the Court finds that there was no error by the ALJ in discounting the opinions of Dr. Pierson and no error in failing to further develop the record.

**C.    The ALJ Properly Assessed Plaintiff's RFC.**

On June 2, 2008, the psychological consultative examiner, Steven Brawer, Ph.D., examined Plaintiff and found that he would be able to learn a simple, repetitive task, and *may be able* to perform *some* detailed, varied, or complex nonverbal tasks. (AR at 52 (emphasis added).) On July 30, 2008, consultative examiner, C.H. Dudley, M.D., completed a mental residual functional capacity assessment and found moderate limitations in Plaintiff's ability to understand and remember detailed instructions, and to carry out detailed instructions. (Id. at 28.) Dr. Dudley opined that Plaintiff could carry out simple work-related tasks. (Id. at 30.) Plaintiff contends that the ALJ erred in accepting Dr. Brawer's findings as

they were not based on a degree of medical certainty.  He also claims that Dr. Dudley's findings "point to a person capable of performing simple one-or-two step jobs."  (JS at 13.)

In this case, the ALJ found Plaintiff capable of performing simple repetitive tasks.  (AR at 16.)  In addition to his other arguments, Plaintiff contends this phrase is ambiguous.  (JS at 12.)  He notes that the DOT defines jobs consisting of reasoning level 2 tasks, such as those of assembler and sorter, to apply "commonsense understanding to carry out *detailed* but uninvolved written or oral instructions" (id. (quoting DOT App. C)), while jobs involving reasoning level 1 require "commonsense understanding to carry out *simple* one- or two-step instructions" (id. (quoting DOT App. C)).  He appears to claim, therefore, that he is unable to perform the reasoning level 2 jobs found by the vocational expert and the ALJ, such as assembler and sorter, because his limitation to simple repetitive tasks indicates an inability to carry out detailed but uninvolved written or oral instructions as required by reasoning level 2 jobs.  (Id.)

Preliminarily, the Court finds that the ALJ's RFC mirrored the opinion of Dr. Brawer, who opined that Plaintiff could learn a simple repetitive task.  Moreover, despite Dr. Brawer's opinion that Plaintiff might be able to perform some more detailed tasks, the ALJ gave Plaintiff the benefit of the doubt when he restricted him to simple repetitive work.

To the extent Plaintiff contends that the jobs of assembler and sorter are inconsistent with his RFC limiting him to simple repetitive work because they both require the performance of *detailed* tasks, his claim fails.

A job's reasoning level "gauges the minimal ability a worker needs to complete the job's tasks themselves."  Meissl v. Barnhart, 403 F. Supp. 2d 981, 983 (C.D. Cal. 2005).  Reasoning development is one of three divisions

9

comprising the General Educational Development ("GED") Scale.[5] DOT App. C. The DOT indicates that there are six levels of reasoning development. Id. Level 2 provides that the claimant will be able to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." See, e.g., DOT 209.587-034. Plaintiff is apparently focusing on the fact that the word "detailed" is included in the definition of Level 2 jobs, and contends he is limited to a reasoning Level 1, which provides that the claimant will "[a]pply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." Id. The Court disagrees.

As explained by the court in Meissl, rejecting a similar argument, the Social Security Regulations contain only two categories of abilities in regard to understanding and remembering things: "short and simple instructions" and "detailed" or "complex" instructions. Meissl, 403 F. Supp. 2d at 984. The DOT has many more gradations for measuring this ability, six altogether. Id. The court explained:

> To equate the Social Security regulations use of the term "simple" with its use in the DOT would necessarily mean that all jobs with a reasoning level of two or higher are encapsulated within the regulations' use of the word "detail." Such a "blunderbuss" approach is not in keeping with the finely calibrated nature in which the DOT

---

[5] The GED scale "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance. This is education of a general nature which does not have a recognized, fairly specific occupational objective. Ordinarily, such education is obtained in elementary school, high school, or college. However, it may be obtained from experience and self-study." DOT App. C.

measures a job's simplicity. Id.

Furthermore, the term "uninvolved" in the DOT Level 2 explanation qualifies the term "detailed" and refutes any attempt to equate the Social Security Regulations' use of the term "detailed" with the DOT's use of that term. Id. The Meissl court also found that a plaintiff's RFC must be compared with the DOT's reasoning scale. A reasoning level of one suggests the ability to perform slightly less than simple tasks that are in some sense repetitive. For example, they include the job of counting cows as they come off a truck or tapping the lid of a can with a stick. Id. The ability to perform simple, repetitive instructions, therefore, indicates a level of reasoning sophistication somewhere above Level 1. See, e.g., Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (holding that "level-two reasoning appears more consistent with Plaintiff's RFC" to "simple and routine work tasks"). The DOT's Level 2 definition provides that the job requires the understanding to carry out detailed instructions, with the specific caveat that the instructions be "uninvolved" – that is, not a high level of reasoning. Meissl, 403 F. Supp. 2d at 985.

Here, the Court finds that the DOT's reasoning development Level 2 requirement does not conflict with the ALJ's prescribed limitation that Plaintiff could perform only simple repetitive. See id. at 984-85 (finding that reasoning development Level 2 does not conflict with the ALJ's prescribed limitation that plaintiff perform simple, routine tasks); see generally Hackett, 395 F.3d at 1176. Plaintiff's attempt to distinguish the DOT's reasoning Level 2 classification from his RFC limitation to "simple repetitive work" work is without merit. See Meissl, 403 F. Supp. 2d at 984-85; see also Eckard v. Astrue, Cse No. 1:11cv0516 DLB, 2012 WL 669895, at *8 (E.D. Cal. Feb. 29, 2012).

Accordingly, the Court finds that the ALJ did not err in assessing Plaintiff's RFC and sustained his burden of proving there is work in the economy

1 that Plaintiff can perform.  Thus, there was no error.

## IV.
## **ORDER**

Based on the foregoing, IT IS THEREFORE ORDERED, that judgment be entered affirming the decision of the Commissioner of Social Security and dismissing this action with prejudice.

Dated: December 4, 2012

/s/ Oswald Parada

HONORABLE OSWALD PARADA
United States Magistrate Judge